Good morning. Good morning, Your Honors. Karen Gold of Blackstone Law on behalf of petitioners Jacob Sage and Reginald McOwens. May it please the Court. We're hearing a petition for writ of mandate. So we're going to be going over the Bauman factors. And I'd like to start with factor number three, which is the clear error as a matter of law. Primarily because that one is typically the controlling factor. Also because there are several instances of what we believe were clear error in this order. And I just want to be sure to touch on each of them at least briefly in the time allotted. So the first instance of clear error was when the district court erroneously applied the FAA. So initially the FAA is triggered here, but these workers fall into the section one transportation worker exemption to the FAA. And there's a case that's very, very much on point, which is the Ortiz case, which is a Ninth Circuit case from, I think it's recent, it's 2024. And it talks about this two-step test in Saxon. Well, it seems to me when I look at everything, what I'm sort of focusing on here is that we've got these declarations that the court basically either didn't consider or said they're self-serving or something to that extent. So I'm really looking at this from what weight the district court is required to give those declarations because Ortiz is factually very similar to this case. That being said, if the district court should have given petitioner's declarations more weight, then if that's sufficient to say that they were transportation workers, should we remand the determination of their qualifications for the transportation worker exception to the district court? Or can we make that determination here? Well, Your Honor, I believe that this court can make that determination. The record is very, very clear. There's no dispute as to the type of work that these employees performed. So on a motion to compel arbitration, it is initially under a summary judgment standard. And that's under NAPGE versus People Connect, 38F 4th 824. So the summary judgment standard applies. Here you have conflicting evidence. You have evidence from their witness that says they did sign this, that the FAA should apply. Here's why, generally speaking. We have conflicting evidence as to what they actually did. There's no conflicting evidence on that, Your Honor. And that's why I believe the Ninth Circuit should be able to reach a ruling on that issue. If we were to remand, would it be open to the district judge to actually have a hearing so that the other side would be invited to present conflicting evidence if they had any? I believe that that ship has sailed, that they did have the opportunity to present that evidence, and they didn't do it. So our request and our preference obviously would be for this court to make a determination on the record that was available at the time. But there was no hearing. So when would they have presented that evidence? They presented declarations. Well, it was the same declarant, but there were two declarations. And that's where they would have had the opportunity to say, no, Mr. Sage and Mr. McOwens did this. They didn't do what they said that they were doing in their jobs at the warehouse. And they never presented any evidence like that. We called them out on it in our opposition brief. And again, they did not provide any evidence or testimony. It seems that they strategically made a decision to try to attack the sufficiency of your evidence that they met that exception. But had they put in declarations that said otherwise, what would have been the role of the trial? Could the trial counsel at that point have weighed the evidence as to both of them and made a determination? Under NAPQA, because there's then conflicting evidence, it would have to go to a bench trial unless a jury trial is requested under Section 4 of the FAA. So if there is disputed evidence and the court finds that they can't rule based just on the declarations that have been provided, then it has to be, I forget the exact words, but timely tried. There has to be a hearing and the was no conflicting evidence. As to this issue, there's conflicting evidence as to other issues. As to this issue on the applicability of the FAA and the transportation worker exemption, there is nothing in the record indicating that these workers did anything other than what they said they did. So for that reason, we believe the court can at least issue an order saying, based on all the evidence present here, these petitioners are exempt from the FAA. I guess I'm trying to decide what we have to decide here, because if in fact there was no evidence that they had signed an arbitration agreement, we wouldn't get to the exception, right? Because if there's no arbitration agreement, then? So, Your Honor, there is no evidence that they ever signed an arbitration agreement. There is some evidence in the record. Now tell me that there's no evidence, then that's a little hyperbolic to me. I looked at what was in there. So I wouldn't make the statement lightly, Your Honor. Do you by chance have the record in front of you with document 30-1? I have some things in my electronic bench brief, but why don't you tell me what you're talking about? Okay. So document 30-1 in the record is the supplemental declaration of Mr. Dickinson, in which he provides a printout that had not previously been provided to our office. And because this was a supplemental declaration, we did not have an opportunity to respond to it. There was no oral argument. So we submitted timely written objections. But if you look at the PDF document 30-1 on page 17 of 23, actually 16 of 23 on the PDF, there's a list of the documents that Mr. Sage agreed to. And it says e-signature, and it lists out a whole bunch of documents. And under each document, it either says NA, not applicable, indicating that they didn't receive it or acknowledge it or sign it. Or some of them say accepted next to it. The last document on that page says General e-signature 9 and then parentheses at will arbitration, and it says NA. That is their evidence that they put in that Mr. Sage did not sign this agreement. He did not acknowledge it. It's in their tracking record. And if you go back to the declaration that they have from Mr. Dickinson, he cites to a different part of the same exhibit where they talk about where Mr. Sage had electronically agreed to certain other documents. But this is clear that it's General e-signature 9. That's the identification of the at will arbitration agreement. And that very clearly in this exhibit says NA. He did not agree to that. So we never had the opportunity to address this, which is another part of one of the issues of clear error. We believe that the court, in allowing this to stand without our opportunity to present these points to the court, and then not entertaining oral argument, basically bound us to evidence that we had no opportunity to really respond to, which is not proper. Well, it appeared when I looked at the record that the district court relied on Capstone's online system as establishing the petitioner assented to the arbitration agreement. And did the petitioners offer anything contrary to that? They did. So they both submitted detailed declarations. They actually did not apply through Capstone's online program. They applied for their positions through Indeed.com. And they both, very detailed, go into their rendition of the facts, and that they did not agree to this, that they didn't even have access to online systems. One of them testified that he believed that his manager signed him up and gave him access to online things, but he had to go to his manager to access that system. So there are detailed declarations in the record where they give their rendition of the facts, and they are very different from what Mr. Dickinson said. Now, another issue that I think is important to remember here is that motions to compel arbitration are heard before any party has the opportunity to really conduct discovery. It's before the Rule 26 conference happens. Discovery is not open. So part of the difficulty here is trying to figure out, as a party who is trying to get out of the arbitration that they're being pushed into by a defendant when they didn't agree to it, is how do you prove that you didn't agree to it, right? When you don't have access to evidence as a guarantee, you give your declarations and you say, this is what happened, here's my story. And the clear error on this issue with respect to what the district court did is they said, your story doesn't count. If they did agree to it, let's just say they did agree to it. But if they're entitled to the transportation exception, what effect does that have on even if they did agree to it? It would, I believe, end in the same result, right? So this case had multiple layers and multiple points where, had the court followed what we believe to be controlling law, there would have been multiple avenues to reach the same conclusion, which is that this case should not have been compelled to arbitration. So your honor is exactly correct. If they didn't agree to arbitration, they're not in arbitration. If the FAA does not apply because of the Section 1 exemption, they're not in arbitration. If the court, so as a repercussion of incorrectly, in our opinion, finding that the FAA applied here, the court then decided to not apply Labor Code Section 229, which while the scope of 229 is an issue that I know the Ninth Circuit and California state courts are still wrestling with, it's undisputed that 229 is not preempted by the FAA and that exempts some of the causes of action. Can I interrupt? I'm not sure you understood Judge Callahan's question in the same way I did. I understood her question to be okay, what if they are not covered by the FAA? That is to say we can credit their declaration, but nonetheless they agree to arbitration. Are they bound to arbitrate even if not covered under the FAA? So I think that was her question. Yes. And I didn't get an answer to that question. I'm happy to answer that question. I apologize, your honors. So if that happens, then Section 229 of the Labor Code would apply and that exempts some of the causes of action from arbitration. The scope of Section 229, Labor Code Section 229, is currently being treated differently by different courts. But if the FAA doesn't apply but they agree to arbitration, then the court has to do a gentry analysis in which the court looks at a multitude of factors to determine whether the class action waiver is enforceable or not. And the court has to apply 229 which again would knock some portion of these claims out of arbitration. But none of this was done because the district judge concluded that the declarations should be ignored. Correct, your honor. So that was another level of what we believe to be clear error. But the district court did find that they agreed to arbitration. The district court did find that they agreed to arbitration only after completely ignoring the declarations from our clients and from me with respect to at least one gentry factor. And it did so find without having had any discovery? Without any discovery, without any ability to oral argument, to respond to the reply evidence despite timely written objections. Yes, your honor, that's absolutely correct. Do you want to save any time for rebuttal? I would like to save three minutes, your honor. We have two left, so if you keep talking, you'll have even less than that. Okay, thank you, your honor. Good morning. Good morning, your honor. My name is Jennifer Riley. I'm here representing the Real Party and Interest Capstone Logistics. May it please the court. The remedy of mandamus is a drastic one suitable only for extraordinary situations. This is not an extraordinary situation. A mere error by the district court or a mere disagreement in this case with the district court's assessment of the evidence is not enough to show clear error. But if basically the district court is requiring people to show too much at this particular stage and just saying these are self-serving, well, you know, everything, you know, I don't know anything in the law that's not self-serving. I've never probably seen a declaration that's not self-serving. Now, I mean, sometimes you might knock one out because the person doesn't have the qualifications to make the conclusions, but here they do have the qualifications to say what they did at work. Now, you can argue you didn't have the burden there that they did, but you sat on your hands and didn't, you know, there's someone at Capstone that could say, hey, their work is completely different. They didn't do it. So to me, the first thing I'm looking at is are these declarations sufficient to show that they're entitled to the exemption? Your Honor, they were not. Contrary to counsel's statement, the district court didn't simply disregard or ignore that. Well, but you got to talk about Ortiz. Ortiz, I'm having a hard time distinguishing Ortiz from the facts here. And in Ortiz, they found something sufficient that's very similar to this. Your Honor, the record in Ortiz, respectfully, was very different than the record that we have here. Here, the Supreme Court in Southwest Airlines laid out a couple of factors that the plaintiff needs to meet. It's the plaintiff's burden to meet them. First and foremost, the plaintiffs bear the burden of showing the class of workers to which they actually belong. Well, we're not talking class. We're just talking these two individuals for the moment. And their declaration, both of them say, I did stuff that was in interstate commerce. I could read you the declarations, but that's what they say. And they say they're warehouse people, and Ortiz were warehouse people too. I mean, the Supreme Court case that you cited, those were Southwest Airlines. Those were baggage people. That's a different situation. But then we're bound by Ortiz, and Ortiz aren't Southwest people. They're people that work in a warehouse, and they found it sufficient. Respectfully, Your Honor, I disagree. So Mr. McGowans, for instance, in his declaration provided little to no information in the way of relevant facts about what he actually did. He said he oversaw- Do you want me to read you the declaration? Yes, sir. It's in paragraph eight of his declaration. He writes, in my role as second chef supervisor, I was responsible for overseeing and working alongside five to six employees tasked with locating various items of food and other goods in the warehouse, collecting and moving them together onto pallets, dusted for various locations, wrapping those pallets for transportation, loading them onto trucks that would then deliver food and goods to various ralphs and Safeway stores, primarily in California, Washington, and Oregon. Sounds as though we're talking about interstate commerce. He's saying he worked alongside people who did those things. But he was also a supervisor. He said overseeing and working alongside. He doesn't say what he did. He says he oversaw and worked alongside other folks who moved goods. He doesn't provide anything about what he did or what a supervisor actually and typically does. He refers to what other folks do. In Ortiz, one of those people was a supervisor as well, if I remember correctly. Yes, Judge. In Southwest Airlines, the gentleman at issue was a supervisor, but there it was uncontested that as a supervisor for Southwest Airlines, he frequently loaded goods on and off of planes. There is no such evidence here. How about Mr. Sage? In my role as travel team selector, I collected and moved products. How are we doing on that one? Mr. Sage says nothing about where those products came from or where they go. He says he moved them around the warehouse. He moved them from point A to point B inside a warehouse. Again, there is no fact that ties him in any way to active transportation in the free flow of goods across borders. He provides no information. Now, if I disagree with you as to whether or not these statements are sufficient, where are we? The district judge didn't say they were insufficient because of what they said. The district judge said they were insufficient because they were self-serving. The district judge did not rule as you're now asking us to rule. So what do we do if I disagree with you? Well, Your Honor, he found them insufficient. We found them insufficient because they were self-serving. They are self-serving. Well, of course they are. There was nothing else in the record to provide evidence that would be subverting. He did not say I disregard them because if I were to believe them, they would be insufficient. He disregarded them because they were self-serving. So I'm asking you, so what if I disagree with you and view both of these declarations as showing that they were engaged in interstate commerce? Can we support the district judge for saying, well, they're self-serving and therefore, simply because they're self-serving, I can disregard them? Well, Your Honor, they were self-serving, but they were also insufficient. And I think there was no error. I'm asking you a different question. Assume for purposes of my question that they are insufficient. I don't ask you to concede that. I ask you to assume that for purpose of the question. Was the district judge nonetheless entitled to disregard them solely on the ground that they were self-serving? Your Honor, the Ninth Circuit has repeatedly found no genuine issue of fact where the only evidence presented is self-serving, uncorroborated testimony. Repeated. What case do you have? Right now in front of me, I have Villarimo v. Aloha Island Air. That's 281 F. 3rd, 1054. Ninth Circuit, 2002. But I believe that decision also cites others as well. Yeah. I'll read you from Nigro v. Sears-Roebuck, 270, 284 F. 3rd, 497. District court may not disregard a piece of evidence at summary judgment solely because of its self-serving nature. Well, Your Honor, I think if we, even if we... How do you respond to that? Your Honor, I think there may be a disagreement in the Ninth Circuit based on the record at hand. And here, the record at hand only includes these self-serving statements that are uncorroborated. But also uncontradicted. Well, we can contrast that with cases where the plaintiffs actually did present evidence. Here, the plaintiffs presented no factual evidence and no corroboration. What better evidence? If you ask me, Judge Callahan, what do you do every day? Now, who knows better than I what I do every day? Now, you could look at the end of it and say, well, she's just making herself look so good and so busy and this, that, and the other. But I know more what I do, like I'm in court right now talking to you, then I'm going to go talk to these judges after we finish, and then I'm going to go talk to the lawyers that were, you know, I'm going to do all those things. Now, at the end, there are some people out there that might know what these people do that work for you. And if it isn't really what these people do and what they're getting paid to do, it sort of crickets in the room here. And so either you're completely right that they don't know what they actually do and that, and you took that risk, you put all your eggs in one basket there, if the panel, and I'm only saying hypothetically because we haven't conferenced on this case, but if hypothetically we believe that this affidavit is sufficient to show what they do and shows that they satisfy that, what's left? What do we do? Well, Your Honor, I would of course, you don't want that conclusion. I understand that, but don't argue, just assume hypothetically, that's what we decide. Well, Your Honor, it is the plaintiff's burden here, and I don't think declarations are sufficient. But if we say it's enough. Well, but I've dealt with these in a lot of cases, say, like CAFA cases where, you know, showing the amount in controversy, how much evidence do you have to put in to show that? And of course, there's always the argument, and people say, well, there's still a possibility that it doesn't read the monetary amount or whatever. We said, okay, what you did is sufficient. This is at a stage in the proceeding, very early, no discovery, nothing like that. If we say it's enough, then what you would know going forward is I better put something on if it's wrong. And I find it hard to believe that if you really thought they didn't do those jobs, you got a whole lot of people in your arrows in your quiver there to say, oh, that's not the job they did at all. Their job was to deliver lemonade or something. Well, Your Honor, what they're saying they did though, Mr. Sage, for instance, I moved stuff from point A to point B in a warehouse. That's only part of the story. But they also say that they put them on pallets, these things went to other places. If you're in a position to say, oh, we don't ship to other places. There's absolutely no evidence that these goods were crossing state lines. Well, I mean, that was provided in your website though. I mean, they also presented, petitioner presented information from your website indicating what the business did. The reach of your business? Yes. Your Honor, the Supreme Court has been clear, most recently in Bissonette, that what the company does is irrelevant. What matters here is what these individuals actually do and whether these folks were engaged in interstate transportation. But in the absence of you providing anything else, the district court had the website of what the company did and then the declarations of what these people did for the company. So if you're saying now, well, there's no evidence that we shipped from, you know, did, were involved in interstate commerce, then what else is there to present? I mean, how can they, what else could they have presented? Someone that rode on the truck that these things went to the other state, then took a selfie of themselves in the other state is... Well, Your Honor, here, Mr. Sage doesn't even allege they crossed the borders, okay? He doesn't even allege these goods came from out of state and went back out of state. No, in his declaration, he doesn't. He said they went to various places. But I will say, as an example... Do you want me to read from the declaration? At the warehouse, worked in Arizona, Illinois, shipments of various products, such as cookies, cheese, salami, milk, ice cream, frozen dinners, arrived from other states. Your Honor, he says at the warehouse in Illinois and Arizona, where he worked out, he's not talking about his job in California. Well, he worked at all these places. But this case is about his job in California. He's alleging a violation of labor code based on what he did in California here. All right. I think we're not making progress here. But that being said, let me ask you, let's just assume... I asked your friend on the other side a question about, had you put in declarations that conflicted with what they said and said, this man just gives ice cream to people, or he just does X, Y, and Z? What would have been the process for the district court to do at that point? Would it be to have a trial, like she said, on that issue? Yes, Your Honor. So here, the plaintiff presented these declarations in its response. And as you can see, the plaintiff is very vehemently objecting to the company's provision of evidence with its reply. So here, we really had no opportunity to present evidence. And so here... You're saying you could not have put in declarations? Are you saying you could not put in declarations? We would have had to do it with our reply brief, which the plaintiff disagrees with. Now they're saying we should have, but at the same time, they're saying... Did you even try? ...presenting evidence. Did you even try to present declarations contradicting what's in these declarations? Your Honor, we didn't present evidence with our reply brief because it was the plaintiff's... So the answer is you did not try? We did not submit declaration evidence with our reply. As an officer of the court, could you present declarations that would show that this company does not do transportation in interstate commerce? Could you present declarations that said that? Your Honor, the company does transport in interstate commerce, but that's not our question here, which is... The question here is what these plaintiffs did, what people in their job did. And there is no evidence that people in their job actively engaged in the transport... Well, as an officer of the court, are you telling me you could not, you could have presented declarations that disagree with what they said? Yes, Your Honor. If we'd had the chance to have an evidentiary hearing, have discovery, we certainly can contest what they said in the declaration. Well, what would your declaration say? Well, Your Honor, here, for instance, the plaintiff, Sage, said that he moved things from point A to point B in the warehouse. That is something that's not in dispute. He doesn't say that he moved things across state borders, but if we were called upon to present evidence that he did not move things across state borders or put things in interstate transportation, we could certainly present evidence that... But he did not himself, he did not himself go across the state borders, take a selfie, and do all that. That's what you would present? That he was not, in fact, either unloading goods or loading goods that crossed state lines, because that wasn't his job, and that's not even what he contends his job was. Okay. All right. We have two seconds. Oh, Your Honor, I also wanted to say the... We have one... On the remand issue. We have no time to do it. Actually, I do think I already addressed that. I'll give you one minute to pull it together. Yes, Your Honor, I actually do believe I already answered your question about what to do here. If the court finds that the district court erred or committed clear error, which would be the standard, if the court here finds that the district court committed clear error, which I don't think it did, I don't think a weighting of the evidence can be clear. I know, I know. We've argued about that for your whole time, so you're not conceding anything. The remedy here would be to remand for consideration of the evidence. Okay. Thank you. Thank you. I just wanted to address very briefly the argument about whether our clients physically unloaded or loaded goods, and also the argument about whether our clients physically crossed state lines with the goods. Under Ortiz, the Ninth Circuit has held very clearly that that doesn't matter. In Ortiz, the court actually made a presumption because the record was unclear. So the court said, we're going to presume that he didn't load or unload goods off of trucks that had been in and out of interstate commerce. We're presuming for purposes of Ortiz that this worker worked within the warehouse, moving goods within the warehouse to continue them on their stream of commerce. So that was a presumption in Ortiz that was expressly articulated by the court. So under Ortiz, which was based on Saxon, it's okay that that showing was not made. That doesn't matter under binding Ninth Circuit precedent. I wanted to go back very quickly to what the court said about what do we do next. So if we determine that these employees were exempt from the FAA, what happens? And I had initially said, okay, we look at 229. That kicks some of the claims out. We're not sure which ones. Then we do the gentry analysis. Under gentry, we are the only ones that provided any evidence as to any of the gentry factors. That, as a matter of law, I believe you guys could rule on as well. Because there is no... The panel could, not you guys. My apologies, Your Honor. Now I'm giving you a hard time.  I always tell students, don't call the judges you guys. Excellent advice. My apologies. And when they're all gone. Y'all. You can say y'all. So, you know, there is only one side of the story on that. Again, they did not present any evidence as to any of the gentry factors. The other piece of that puzzle, though, that I didn't mention is the unconscionability analysis. So if the court looks at the record and decides that there is unconscionability and severance was improper here, then that would be another ground to not have to remand for a trial. Because if the agreement was unconscionable, it's also not enforceable. But the district court said it did sever and said it put out what it considered to be the bad. The next level of what we consider to be clear error here, and this one I think is pretty critical, is that in determining severance, the district court did not actually look at the agreement at all. If you read the opinion and how it approached severance, the district... Just quickly. Okay. Quickly. No, no, no. Quickly. My time. Yes. Okay, quickly. Hypothetically, if we agree that the declarations are sufficient, but we also agree, this is all hypothetical, so just don't argue with me on my hypothetical, that they signed an agreement, what happens when it goes back? When it goes back, the trial court would be asked to rule on 229, to rule on Gentry, and figure out if the class action waiver is enforceable or not. And I believe there is a critical issue because the contract itself, paragraph 12 of the arbitration agreement... Now are you arguing that they didn't consent? I don't want to hear that argument. I gave you a hypothetical. Prohibit severance. So, okay. If none of my panel members have any additional questions, do you? No? No. All right. Then you're done. Thank you very much. Thank you both for your argument. I would say that I saw two very tenacious arguments, and we appreciate that, and it's helpful to us. So, thank you both. All rise. This court for this session stands adjourned.
judges: FLETCHER, CALLAHAN, Marquez